## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**J.M., a minor child, by and through
his next friend P.M.,**

      **Plaintiff,**

-v-                                     **Case No. 2:09–cv–855**

**Richard Henderson, et al.,**               **Judge Michael H. Watson**

      **Defendants.**

### <u>OPINION AND ORDER</u>

Plaintiff asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution by publishing Plaintiff's juvenile sex offender status. He brings his claims under 42 U.S.C. §§ 1983 and 1985(3), as well as state law.

Defendants move for summary judgment. ECF No. 27. For the reasons that follow, the Court grants Defendants' summary judgment motion to the extent that it dismisses all of Plaintiff's claims against the Pike County Sheriff's Department with prejudice, dismisses all of Plaintiff's federal claims against Defendants Richard Henderson ("Henderson"), Beverly Ferrazzi ("Ferrazzi") and Notification is Prevention Foundation ("N.P.F.") with prejudice, and declines to exercise supplemental jurisdiction over the state law claims asserted against the latter Defendants.

### I. FACTS

When the Complaint was filed, Plaintiff J.M. was a seventeen-year-old who resided in Pike County, Ohio. Defendant Henderson is, and was at all relevant times, Sheriff of Pike County. Defendant Pike County Sheriff's Department is the division of

county government responsible for, *inter alia*, overseeing registration obligations and community notification for sex offenders residing in Pike County. Defendant Ferrazzi is the administrative secretary for the Communications Division of the Pike County Sheriff's Department. Defendant N.P.F. is a non-profit corporation that assists state and local governments in establishing and maintaining sex offender notification systems.

J.M. was convicted of two counts of rape. On April 29, 2008, the Pike County Court of Common Pleas, Juvenile Division, classified J.M. as a Tier III sex offender in accordance with Ohio Revised Code § 2152.83(C)(1). The juvenile court also classified J.M. as a juvenile offender registrant. On the day of his disposition and classification, the juvenile court gave J.M., and his parents, written notice of his registration duties which indicated he was a Public Registry Qualified Juvenile Offender Registrant, subject to community notification. Defs.' Reply Attach. 1, 5, ECF No. 36-1.

The Pike County Sheriff's Department placed J.M.'s information on Ohio's electronic sex offender registration and notification website ("eSORN"). Ferrazzi then instructed N.P.F. to send postcards to J.M.'s community containing information about J.M.'s sex offender status.

In April 2009, J.M. filed an action for a writ of mandamus in the Fourth District Court of Appeals of Ohio seeking an order ending the community notification of his sex offender status.[1] Pl.'s Resp. Opp'n 10, ECF No. 33.

_____

[1]Plaintiff maintains that the mandamus action was filed on April 9, 2009, but does not say in what court. Pl.'s Resp. Opp'n 10, ECF No. 33. Defendants represent that the mandamus action was filed on April 6, 2009 in the "Pike County Court of Appeals." Defs.' Reply 4, ECF No. 36. The jurisdiction of the Fourth District Court of Appeals of Ohio includes Pike County.

On June 23, 2009, N.P.F. sent postcards to the community with J.M.'s name, photograph, incorrect age, and sex offender status. On July 9, 2009, N.P.F. sent new postcards to the community with J.M.'s correct birth year but otherwise the same information as in the first notice.

On July 15, 2009, the Pike County Court of Common Pleas, Juvenile Division, created a journal entry ordering all community notification concerning J.M. to cease immediately.[2] Pl.'s Resp. Opp'n Attach. 5, ECF No. 33-1. The Pike County Sheriff's Department received a copy of that journal entry on July 23, 2009. Defs.' Reply Attach. 2, ECF No. 36-1. Also on July 23, 2009, Angie Miller, a public defender who represented J.M., faxed the order requiring all notification of J.M.'s status to stop to Alicia Irmscher, the executive director of N.P.F. There are no allegations any of the Defendants continued to alert the community of J.M.'s sex offender status after July 23, 2009.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case

---

[2]Plaintiff provided the Court with a copy of the journal entry dated July 15, 2009. Defendants provided an otherwise identical order dated July 21, 2009. Neither party provides an explanation for why the same entry has two different dates. Both are after July 9, 2009, the last time there was community notification on J.M's sex offender status, so the discrepancy does not affect the following analysis.

and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Pittman v. Cuyahoga County Dept. of Children and Family Servs.*, 640 F. 3d 716, 723 (6th Cir. 2011).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Pittman*, 640 F. 3d at 723. The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 640 F. 3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

### III. DISCUSSION

## A. Defendant Pike County Sheriff's Department not a *sui juris*

Defendants argue that the Pike County Sheriff's Department is entitled to

summary judgment on all claims against it because it is not *sui juris*. Plaintiff does not respond to that argument. Under Ohio law, a county sheriff's department is not an entity capable of being sued. *Bay v. Clermont Cnty. Sheriff's Dep't*, No. 09 CV 00855, 2009 WL 2495774, at *2 (S.D. Ohio Aug. 12, 2009). Therefore, the Court grants the Pike County Sheriff's Department summary judgment on all of Plaintiff's claims.

## B. Plaintiff's § 1983 Claims

Plaintiff advances three claims under 42 U.S.C. § 1983. First, Plaintiff argues Defendants violated his Fourteenth Amendment procedural due process rights because he did not receive the appropriate hearing and notice before the community was notified of his status as a sex offender, and because the notification contradicted a court order. Second, Plaintiff maintains that Defendants violated his Fourteenth Amendment substantive due process right to privacy. Third, Plaintiff contends Defendants' actions constituted cruel and unusual punishment in violation of the Eighth Amendment.

Section 1983 states in pertinent part:

[e]very person who, under color of any statute, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proceedings for redress[.]

42 U.S.C. § 1983. Accordingly, a plaintiff must show that a person acting under color of law deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

### 1. Qualified Immunity for Henderson and Ferrazzi

Defendants argue that they are entitled to qualified immunity on Plaintiff's Fourteenth and Eighth Amendment claims because Henderson and Ferrazzi acted pursuant to a court order. Plaintiff argues that Defendants acted contrary to a court order and violated Plaintiff's clearly established constitutional right to privacy and therefore qualified immunity is unavailable to Defendants.

When a state official acts in accordance with a facially valid court order, the official is entitled to qualified immunity. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994). In *Bush*, the operators of a non-secure detention home brought an action against the referee of the county juvenile court and the court administrator based on the placement of a juvenile in the plaintiffs' detention home. *Id.* at 844. The administrator determined that the juvenile was not dangerous based on the findings in the referee's order and therefore placed him in the non-secured facility. *Id.* It was later discovered that the juvenile had a history of violence and the referee's findings had been in error. *Id.* at 845. The Sixth Circuit held that the administrator who had placed the juvenile was entitled to qualified immunity because he relied on the referee's court order in making his placement decision. *Id.* at 848. Therefore, the administrator was entitled to at least qualified immunity.[3] *Id. See also Smith v. Leis*, 407 F. App'x 918, 929 (6th Cir. 2011) (acting pursuant to a facially valid court rule entitles a state official to qualified immunity because the official would not know he was violating the plaintiff's constitutional right by

---

[3]In *Bush*, the Sixth Circuit first held that when a state official acts pursuant to a facially valid court order, that official is entitled to absolute quasi-judicial immunity. *Bush*, 38 F.3d at 847. The holding as to qualified immunity was made as an alternative holding. *Id.* Defendants have not argued for absolute immunity in this case.

complying with the order).

Plaintiff contends that Defendants were not acting pursuant to a court order in notifying the community about J.M.'s sex offender status. The copies of the 2008 juvenile court order provided to the Court, however, verify that the written notice included a community notification requirement. On April 29, 2008, the Pike County Court of Common Pleas, Juvenile Division classified J.M. as a juvenile offender registrant. *Id.* The order states that "the child and his parents [were given] written notice of the child's registration and verification duties." *Id.* By referencing the written notice, the order incorporates the requirements of that notice. The written notice has a check in the box next to "Public Registry Qualified Juvenile Offender Registrant, subject to community notification provisions." *Id.* at 5. Moreover, the written notice is signed by J.M., his father, and a Pike County juvenile court judge. *Id.*

Upon receiving the order, Ferrazzi called both the Pike County juvenile court and the Ohio Attorney General's Office to confirm that community notification was ordered in J.M.'s case. Both the juvenile court and the Attorney General's Office told Ferrazzi to follow the court order. Only after receiving the order and verifying its accuracy did Defendants place J.M. on the eSORN site and order N.P.F. to send the postcards. Therefore, Henderson and Ferrazzi acted in accordance with the Pike County juvenile court's 2008 order when requesting that N.P.F. notify the community of J.M.'s sex offender status.

Plaintiff also argues that Ferrazzi's calls to the juvenile court and the Ohio Attorney General's office to verify that the judge ordered community notification for J.M. demonstrate that Henderson and Ferrazzi knew there was a problem with the order.

Pl.'s Resp. Opp'n 6, ECF No. 33. The Court disagrees. Plaintiff fails to point to anything on the face of the order that would have alerted Henderson and Ferrazzi that the order was invalid. In those circumstances, the extra diligence on the part of Defendants does not support an inference that Henderson and Ferrazzi should have known the order was defective. Rather, the assurances that Ferrazzi received from both the juvenile court and the Ohio Attorney General's office supports Henderson and Ferrazzi's reliance on the court order.

Furthermore, Plaintiff argues that filing an action for a writ of mandamus in April 2009 put Henderson and Ferrazzi on notice that community notification was not proper. The mere filing of a lawsuit does not necessarily put a party on notice that conduct is unlawful. *See Ferron v. Echostar Satellite, LLC*, No. 2:06–cv–453, 2008 WL 4377309, at *3 (S.D. Ohio Sept. 24, 2008). Consequently, the filing of the mandamus action did not, by itself, put Henderson and Ferrazzi on notice that the mailing of the postcard was impoper. Rather, when the postcards were mailed, Henderson and Ferrazzi were acting in accordance with the still-valid juvenile court order.

Because Henderson and Ferrazzi acted pursuant to the facially valid 2008 juvenile court order, they are entitled to qualified immunity with respect to Plaintiff's claims under §§ 1983 and 1985. *Bush*, 38 F.3d at 848. Henderson and Ferrazzi are therefore entitled to summary judgment in their favor on all of Plaintiff's federal claims.

In addition, Henderson and Ferrazzi are entitled to qualified immunity because Plaintiff has failed to demonstrate that those Defendants violated Plaintiff's constitutional rights, or that the constitutional rights Plaintiff advances were clearly established when the community notices were sent. The traditional determination of

qualified immunity requires a two-prong analysis. *Saucier v. Katz*, 533 U.S. 194, 200

(2001), overruled on other grounds, *Pearson v. Callahan*, 555 U.S. 223 (2009); *Griffith*

*v. Coburn*, 473 F.3d. 650, 656 (6th Cir. 2007). First, the Court must determine whether

"[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged

show the [state official's] conduct violated a constitutional right." *Saucier*, 533 U.S. at

201. Second, the Court must consider whether that right was clearly established. *Id.* at

200.

Here, Plaintiff does not cite relevant authority to support his contention that

providing community notice of his sex offender status violated his rights under either the

Eighth or Fourteenth Amendments to the U. S. Constitution. Indeed, the authority that

existed when the postcards were sent indicates that community notice of a sex

offender's status is constitutionally permissible. *See Doe v. Michigan Dept. of State*

*Police*, 490 F. 3d 491, 501 (6th Cir. 2007) (sex offender registry statutes do not violate

a substantive due process right); *Does v. Munoz*, 507 F.3d 961 (6th Cir. 2007) (same);

*Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999) (Eighth Amendment does not

prohibit community notification of an individual's status as a sex offender). *See also*

*Doe v. Moore*, 410 F.3d 1337, 1345–47 (11th Cir. 2005) (holding registration did not

violate fundamental right of privacy and was rationally related to the state's legitimate

interest); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (concluding Alaska

registration statute did not violate the plaintiffs' substantive due process rights);

*Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (holding that the sex-offender

registration statue did not infringe on plaintiff's fundamental right to a presumption of

innocence); *Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999) (holding that the

effects of registering under a sex-offender registration statute do not "fall within the penumbra of constitutional privacy protection").  Given that to date no court has recognized a constitutional right to prevent community notification of a sex offender's status, it logically follows that the constitutional rights Plaintiff contends Henderson and Ferrazzi  violated were not clearly established when the subject notices were sent.  For these additional reasons, Henderson and Ferrazzi are entitled to qualified immunity as a matter of law, and therefore also entitled to summary judgment with respect to Plaintiff's § 1983 claims.

### 2.  Plaintiff's § 1983 Claims Against N.P.F.

Because the Court has determined that no constitutional violation has occurred, N.P.F. is entitled to summary judgment with respect to all of Plaintiff's constitutional claims.

Nevertheless, Defendants also argue that N.P.F.'s good faith reliance on the facially valid court order entitles N.P.F. to summary judgment on Plaintiff's § 1983 claims.  Private actors who are not eligible for qualified immunity may still assert a good faith defense to a § 1983 claim.  *Duncan v. Peck*, 844 F.2d 1261, 1267–68 (6th Cir. 1988).  Reliance on a facially valid court order demonstrates good faith and excuses a private actor from liability.  *Worrall v. Irwin*, 890 F. Supp. 696, 708 (S.D. Ohio 1994). The Court finds as a matter of law that N.P.F. relied in good faith on the request of Ferrazzi and the April 2008 court order.  For that additional reason, the Court grants N.P.F. summary judgment on Plaintiff's § 1983 claims.

## C.  Plaintiff's § 1985 Conspiracy Claim

Plaintiff contends that he is entitled to relief under 43 U.S.C. § 1985(3) because Henderson, Ferrazzi, and N.P.F. conspired to violate his Fourteenth Amendment rights by notifying the community of his status as a sex offender contrary to a judicial decision. Defendants argue that Plaintiff has failed to present any evidence that Henderson, Ferrazzi, and N.P.F. conspired or acted contrary to the facially valid court order.

Section 1985(3) prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To state a claim under the statute, a plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, and (3) committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based invidiously discriminatory animus.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005).

Plaintiff does not allege he is a member of a protected class.  His failure to do so is fatal to his § 1985(3) claim.  *See Norris v. Stark County, Ohio*, No. 94-4142, 1995 WL 149137, at *2 (6th Cir. 1995) (failure to allege membership in a protected class, and discrimination based upon such class membership, requires dismissal of any claim under § 1985(3)).  Accordingly, the Court grants Henderson, Ferrazzi, and N.P.F. summary judgment on Plaintiff's § 1985 claim.

### D. Plaintiff's State Law Claims

Having granted summary judgment to Defendants on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court therefore dimisses Plaintiff's state law claims without prejudice.

### IV. DISPOSITION

For the above reasons, the Court **GRANTS** Defendant Pike County Sheriff's Department's motion for summary judgment on all of Plaintiff's claims. In addition, the Court **GRANTS** Defendants Henderson, Ferrazzi and N.P.F.'s motion for summary judgment on all of Plaintiff's federal claims, and **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants.

The Clerk shall enter final judgment in favor of Defendants, and against Plaintiff, dismissing all of Plaintiff's claims against the Pike County Sheriff's Department with prejudice, dismissing all of Plaintiff's federal claims against Henderson, Ferrazzi, and N.P.F. with prejudice, and dismissing the remaining state law claims without prejudice.

The Clerk shall remove ECF No. 27 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**